# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 20-01035-HB |
| Charles Christopher Wright, | Chapter 11 |
| Debtor(s). | **ORDER DENYING MOTION TO STRIKE** |

**THIS MATTER** is before the Court for consideration of the Motion to Strike filed by the United States Trustee ("UST"), asserting Debtor Charles Christopher Wright does not meet the requisite definition of a "small business debtor" pursuant to 11 U.S.C. § 101(51D).[1] Wright filed an Objection[2] and a telephonic hearing was held on April 14, 2020. Participating were Linda Barr on behalf of the UST, Reid Smith, counsel for the debtor, Kershaw Spong, Trustee, and Kevin McCarrell and Harriet Wallace, counsel for South State Bank.[3]

## FACTS

The UST and Wright submitted a Joint Stipulation of Facts that states:[4]

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding.

2. The debtor filed a voluntary petition for relief pursuant to chapter 11 on February 28, 2020, initiating the present bankruptcy case. On his voluntary petition, the debtor designated that he was a small business debtor and elected to proceed as a subchapter V small business debtor.

3. The debtor filed schedules and statements in his case under penalty of perjury on March 20, 2020 (the "Schedules").

---

[1] ECF No. 15, filed Mar. 19, 2020.
[2] ECF No. 29, filed Apr. 8, 2020.
[3] South State Bank did not file a response to the Motion.
[4] ECF No. 30, filed Apr. 10, 2020.

4. The debtor is the sole member of Boiling Pot Investments, LLC ("Boiling Pot"). On September 17, 2018, Boiling Pot filed for relief under chapter 11 of the Bankruptcy Code.

5. Boiling Pot's case was dismissed on June 19, 2019. Boiling Pot did not designate that it was a small business debtor. Boiling Pot's bankruptcy schedules reflected that its sole asset was real property.

6. The debtor is the 49% owner of Carolinas Custom Clad, Inc. ("CCC"). His wife is a 51% owner of CCC. On September 17, 2018, CCC filed for relief under chapter 11 of the Bankruptcy Code. CCC's case was dismissed on June 20, 2019. CCC did not designate that it was a small business debtor. CCC's bankruptcy schedules reflected that CCC's assets include a bank account, inventory, office furniture and equipment, a 1992 Freightliner, a semi-trailer, forklifts, and various machinery and equipment. CCC had engaged in the business of providing powder coating services to the public and manufacturers.

7. At the meeting of creditors for CCC and Boiling Pot, the debtor testified that the businesses had ceased operations in 2018.

8. CCC's Schedule E/F lists the following liabilities: IRS $88,698.70, Lorenza Flores $800, SCDOR unknown, SCDEW $51,706.17, York County Treasurer $30,160.62, AT&T $1,408.81, Atlantic Packing $1,500, Atlas Copco $1,290.73, Atotech USA $8,411.37, Blast-It-All $420, Cardinal unknown, Carolina Carrier $1,475, Chemetall $2,987, City of Rock Hill $10,283.52, DuBois $7,779, FedEx $82.47, Forklifts Unlimited $2,147.59, Freeman Gas $254, Gary May unknown, Henkel Chemicals $9,637.28, Hunter Pipe (owned by Dean Allen) $2,000, Intek $554.91, Intuit $363.08, Low Volume Powder $5,153.25, New Electric Charlotte, LLC $1,645.10, Patriot $1,991.80, PPG Powder $9,407.43, Precision Grinding $2,500, TCI Powder $11,039.24, The Hartford Insurance $18,120.42, The Motor Shop $1,200, Uline $2,240.07, United Rentals $2,304.15, UPS Store $2,691.59, and York County National Gas $18,114.53. None of these liabilities were marked as contingent, unliquidated, or disputed. Sherwin Williams Company filed a proof of claim in the amount of $51,206.55.

9. In 2019, Boiling Pot and CCC sold all of their assets for $700,000. The only creditors of CCC that were paid from the sale proceeds were South State Bank and York County taxes. The purchaser assumed responsibility for the IRS lien that encumbered the personal property. No other creditors were paid.

10. In the debtor's case, the only creditors included in the debtor's liabilities on his bankruptcy schedules, which liabilities had also been listed as liabilities on CCC's bankruptcy schedules are: IRS, Lorenza Flores, SCDOR, South State Bank, Sherwin Williams Company and Dean Allen. All these creditors have liens against the debtor's residence.

The parties also attached a chart reflecting the debtor's "business debt" versus "consumer debt" as of the date of the document.  The chart indicates the amount of the debtor's total scheduled debts is $395,816.29, of which $220,882.42 is for business debts owed to South State, Sherwin Williams, Dean Allen, Lorenza Flores, the IRS, and the SCDOR.  The Joint Stipulation acknowledges these debt amounts may change if creditors not listed in the debtor's bankruptcy schedules file proofs of claim or listed creditors file proofs of claim in amounts that vary from those listed on the chart.  Nevertheless, as of that date, 56% of the amount was stipulated to be business debt.

## DISCUSSION AND CONCLUSIONS

After a debtor elects to proceed as a small business debtor, the United States Trustee or a party in interest may file an objection. *See* Interim Fed. R. Bankr. P. 1020(b).  The Bankruptcy Code defines "small business debtor" as:

> a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,725,625 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor[.]

11 U.S.C. § 101(51D).[5]  A "person" includes an individual, partnership, and corporation. 11 U.S.C. § 101(41).  "When a debtor's eligibility to file under a particular chapter of the Bankruptcy Code is challenged, the burden is upon the debtor to establish such eligibility." *In re Voelker*, 123 B.R. 749, 750 (Bankr. E.D. Mich. 1990) (citing numerous cases).

---

[5] The Coronavirus Aid, Relief and Economic Security Act ("CARES Act") was enacted on March 27, 2020, and amended § 1182(1) to include a separate definition of "debtor" for Subchapter V purposes that is identical to the definition of "small business debtor" in all respects except the debt limitation is temporarily increased to $7,500,000. (H.R. Rep. No. 116-748 (2020)).  The CARES Act is applicable only to cases filed after its enactment.

3

In deciding questions of statutory interpretation, the Court's duty is "to ascertain and implement the intent of Congress." *Kumar v. Republic of Sudan*, 880 F.3d 144, 153-54 (4th Cir. 2018), *cert. denied,* 139 S. Ct. 1445, 203 L. Ed. 2d 698 (2019) (quoting *Broughman v. Carver*, 624 F.3d 670, 674 (4th Cir. 2010)). The Court begins with the text of the statute and, absent a different definition, "interpret[s] statutory terms 'in accordance with their ordinary meaning.'" *Moody v. Huntington Ingalls Inc.*, 879 F.3d 96, 98 (4th Cir. 2018) (quoting *PETA v. U.S. Dep't of Agric.*, 861 F.3d 502, 509 (4th Cir. 2017)). "To determine a statute's plain meaning, [the Court] not only look[s] to the language itself, but also the specific context in which that language is used, and the broader context of the statute as a whole." *Othi v. Holder*, 734 F.3d 259, 265 (4th Cir. 2013) (quoting *Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 258 (4th Cir. 2013)). "If the plain language is unambiguous, we need look no further." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015) (citation omitted). "On the other hand, if the text of a statute is ambiguous, [the Court] look[s] to 'other indicia of congressional intent such as the legislative history' to interpret the statute." *Id.* (quoting *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 53 (4th Cir.2011)).

The context here is a Bankruptcy Code providing relief from debt in various forms including reorganization of a business, sale of assets, valuation of property, the adjustment of debt, and combinations of those and other remedies. Congress recently enacted the Small Business Reorganization Act of 2019 ("SBRA"), which created Subchapter V. Pub. L. No. 116-54, 133 Stat. 1079 (2019) (temporarily amended by H.R. Rep. No. 116-748 (2020)). The SBRA and Subchapter V were designed to broaden relief available to address small business debt. Although the brief legislative history of the SBRA indicates it was

intended to improve the ability of small businesses to reorganize and ultimately remain in business,[6] nothing therein, or in the language of the definition of a small business debtor, limits application to debtors **currently** engaged in business or commercial activities.

> The definition of a "small business debtor" is not restricted to a person who at the time of the filing of the petition is presently engaged in commercial or business activities and who expects to continue in those same activities under a plan of reorganization. That person may have incurred $2,725,625 in noncontingent, liquidated, secured and unsecured debts that arose from business activities before the date of the filing of the case, but as of the petition date may have discontinued those business activities. There is nothing in the legislative history to suggest that in this latter instance, the small business amendments should not apply to that person.

2 *Collier on Bankruptcy* ¶ 101.51D (16th ed. 2020).

Applying the definition to the facts of this case, Wright meets the debt requirements because it is stipulated that 56% of his debts are business debts and his total debt amount is less than the statutory cap. However, the Court must determine if Wright is "a person engaged in commercial or business activities."

To the extent Wright relies on any bankruptcy filing of an affiliate (Boiling Pot and/or CCC's bankruptcies), that reliance is ineffective. The text defines a small business debtor as "a person engaged in commercial or business activities (including any affiliate of such person that *is* also a debtor under this title…." 11 U.S.C. § 101(51D) (emphasis added). Coexistent cases for the person and the affiliate are required. However, Wright meets the definition of a small business debtor on these facts without reliance on a

---

[6] The Report from the House Committee on the Judiciary (Report No. 116-54) states that "[n]otwithstanding the 2005 Amendments, small business chapter 11 cases continue to encounter difficulty in successfully reorganizing" and legislation was needed "to improve the reorganization process for small business chapter 11 debtors." The SBRA allows these debtors "to file bankruptcy in a timely, cost-effective manner, and hopefully allows them to remain in business' which 'not only benefits the owners, but employees, suppliers, customers, and other who rely on that business." *Id.*

coexistent case. He is "engaged in commercial or business activities" by addressing residual business debt and otherwise meets the remaining requirements under § 101(51D).

**IT IS, THEREFORE, ORDERED** that the UST's Motion to Strike is denied.

**FILED BY THE COURT**
**04/27/2020**



Chief US Bankruptcy Judge
District of South Carolina

Entered: 04/27/2020